## NATIONAL LIFE INS. CO. v. PERKINS.

### No. 2331.

Court of Civil Appeals of Texas. Waco.

June 5, 1941.

Read Lowrance & Bates, of Dallas, and Coulter Hoppess and F. L. Henderson, both of Bryan, for appellant.

Lane & Grace, of Hearne, for appellee.

TIREY, Justice.

This is an appeal from a judgment of the district court of Robertson county overruling a statutory plea of privilege of defendant National Life Insurance Company to be used in Dallas county, Texas, the county of its alleged residence. The case was tried to the court without a jury, and defendant has appealed.

The tenth assignment of error is: "The court erred in overruling defendant's plea of privilege and failing to direct that said cause be transferred to the district court of Dallas county, Texas." It requires a comprehensive statement.

Plaintiff's original petition alleged, substantially: (1) That he resided in Robertson county, Texas, and that he was skilled and experienced in matters relating to the location of gravel beds, the mining thereof, and the sale of same to persons interested in purchasing such properties containing gravel in sufficient quantities and properly located for commercial development, and that these facts were well known to defendant; (2) that defendant was a corporation with its principal office in the city of Montpelier, state of Vermont, with a general office in the state of Texas, in the city of Dallas, where it was represented by its general agent and manager, Neil Thomason, engaged in interstate commerce and transactions in this state; (3) that prior to May 6, 1935, plaintiff and defendant, acting through its agent Neil Thomason, were endeavoring to sell the tract of land in Robertson county (referred to as the Camp farm) to Gifford-Hill & Company, and that defendant agreed verbally with plaintiff that in the event such sale was consummated plaintiff would be paid by defendant a commission of ten per cent. for the sale of the

gravel on said place, such sum to be paid plaintiff by defendant irrespective of the form or particulars in which said sale might be consummated; (4) that said defendant, on the 11th day of October, 1935, confirmed said contract by written statement in the following language: "Replying to your recent inquiry, wish to advise that our understanding with reference to your commission in connection with the recent gravel contract ·we have let on the Camp farm reads as follows: 'We are to pay you 10% commission. · The commission to be paid as the funds are received by.the National Life Insurance Company from the gravel contract. You are also to render any help we call on you for in connection with the making of the deal or handling the property after the lease is let.' "; (5) that thereafter "a gravel contract of leasing was consummated and agreed upon between defendant and Gifford-Hill & Company * * *, that defendant recognized plaintiff's right to commissions therein and for a period of several months paid to plaintiff his commissions therein"; (6) that "thereafter defendant and said Gifford-Hill & Company consummated a sale of said property for the total price of both land and gravel in the sum of $35,000.00, then and there paid and contracted to be paid by said Gifford-Hill & Company to the defendant"; (7) that Gifford-Hill & ·Company purchased said land to be used by it in producing and marketing gravel, ballast, sand, etc., in commercial quantities, and that plaintiff rendered valuable and needed services to defendant in the first negotiations between said defendant and the purchaser and performed every service he was called upon to render at the request of the defendant, and that the services rendered by him directly and proximately produced Gifford-Hill & Company as the purchaser for said gravel properties, and that the total commissions due him aggregated $2,841.24; (8) that he made demand upon defendant to pay him the commission earned, but that it had failed so to do; and "that this is a suit against a private corporation on an action which arose wholly or in part in Robertson county, Texas."

Plaintiff seasonably controverted defendant's plea of privilege to be sued in Dallas county, and he specifically referred to his original petition and made it a part of his controverting plea. Plaintiff, in his controverting affidavit, alleged substantially every material detail that he had set out in his original petition, and, in addition thereto, specifically alleged (1) that his cause of action was based upon a written obligation to pay him a commission of ten per cent. on sales of said gravel properties on said farm; and said written obligation being performable in Robertson county, the court had venue of the cause of action under Article 1995, subdivision 5, of Revised Civil Statutes, Vernon's Ann.Civ.St. art. 1995, subd. 5; and (2) that his suit was against a foreign corporation incorporated under the laws of the State of Vermont, with its principal office in the city of Montpelier, doing business in the state of Texas, with a general· office in the city of Dallas, Dallas county, Texas, and that the cause of action, or a part thereof, arose in Robertson county, Texas, the place where the suit was filed and the place where plaintiff resides, and that this court had venue of the cause of action under subdivision 27 of Art. 1995, aforesaid, because said land was located and situated in Robertson county, Texas, and a part of the negotiations for the sale of same were had in said county.

Plaintiff testified substantially that he was a resident citizen of Robertson county, Texas; that Neil Thomason was the agent of the National Life Insurance Company of Montpelier, Vermont, in Texas, Louisiana, and a part of Arkansas; that he had had correspondence with the said Neil Thomason in his capacity as agent and manager of said company at his office in Dallas, Texas; that the land sold was located and situated in Robertson county, Texas, and that he had certain verbal negotiations with the said Neil Thomason as agent for the defendant life insurance company about the property in question with reference to obtaining a purchaser for the gravel deposits, as well as the sale of the land, and that these verbal negotiations were later confirmed by correspondence, as disclosed by letter of Thomason to him dated October 11, 1935, as hereinabove set out; that the negotiations performed by plaintiff occurred principally in Robertson county; that defendant paid him $20 per month, which was ten per cent. of the money that it was receiving from Gifford-Hill & Company; that these payments continued up to December, 1938, but that he received no payments after defendant executed the deed to Gifford-Hill & Company in December, 1938. He also testified that Gifford-Hill & Company had not actually mined the property for gravel and sand and had not removed any sand or gravel from the property at the time of the trial. Plain-

tiff put in evidence copy of the deed in question conveying the land from defendant to Gifford-Hill & Company. This deed, among other things, recited that defendant was a corporation of the city of Montpelier, state of Vermont. It also recited a consideration of $35,000, $8,750 thereof being in cash and the balance of the purchase money being evidenced by twenty-six promissory notes. The deed contained the following reservation: "The grantor herein, National Life Insurance Company, reserves an interest in and title to all gravel removed from said land above described to the extent of 1½ cents per cubic yard for washed or screened gravel; 1¼ cents per cubic yard for pit run, remix or railroad ballast; 1¼ cents per cubic yard for commercial sand; ½ cent per cubic yard for strippings and bedding sand; it being understood and agreed that all such payments are to be made for materials when mined and sold." Defendant offered no testimony.

We think the appellee failed to show that the cause of action alleged by him comes within the provisions of subdivision 5 of Art. 1995 of the statute aforesaid, because we think the writing relied upon by plaintiff was insufficient to show that defendant contracted in writing to perform an obligation in Robertson county, Texas.

Do the plaintiff's pleadings bring the cause of action alleged within the provisions of subdivision 27 of Art. 1995, aforesaid? We think so. As we view the record, the allegations were sufficient and there was ample proof that the defendant was a foreign corporation doing business in the state of Texas, with a general office in this state, located in the city of Dallas, Dallas county, Texas, and that Neil Thomason was its agent and manager. We also think the petition sufficiently alleged that defendant owed some duty to plaintiff, and that the duty of the defendant to plaintiff arose, in part, because of acts performed by plaintiff in behalf of defendant in Robertson county, Texas; but we think the evidence was insufficient to sustain these allegations. As stated above, plaintiff, in his original petition, among other things, alleged substantially that prior to May 6, 1935, plaintiff and defendant, acting through its agent Neil Thomason, were endeavoring to sell the tract of land in question in Robertson county to Gifford-Hill & Company, and that defendant agreed verbally with plaintiff that in the event such sale was consummated,

plaintiff would be paid by defendant a commission of ten per cent. for the sale of the gravel on said place, such sum to be paid plaintiff by defendant irrespective of the form or particulars in which said sale might be consummated. We have carefully searched the statement of facts and we are unable to find any testimony to sustain this allegation. Likewise, the statement of facts fails to show what act or acts were performed by plaintiff in behalf of defendant in Robertson county, Texas, with reference to the negotiations performed by plaintiff in the consummation of the gravel lease, as well as the sale of the land. Therefore, the plaintiff failed to carry the burden required of him to make out a prima facie case against the defendant on the hearing of the plea of privilege. It appears to the court that this cause has not been fully developed, and, under the rule announced by the Supreme Court in Lanford v. Smith, 128 Tex. 373, 99 S.W.2d 593, points 3, 4, p. 594, this cause must be reversed and remanded for a new trial on the plea of privilege.

The other errors assigned may not occur on another trial of the case, and, for that reason, we refrain from discussing them.

The judgment of the trial court is reversed and the cause is remanded.